Wolff *v.* Koppel.

## WOLFF & HENRICKS *vs.* KOPPEL.

The contract of a factor to account for the amount of sales made by him under a *del credere* commission, is not within the provision of the statute of frauds relating to promises to answer for the debts, &c. of third persons, and need not therefore be in writing.

ON error from the supreme court. Koppel sued Wolff & Henricks in the New-York C. P. in assumpsit for the price of certain goods sold by the defendants as the plaintiff's factors under an agreement, as alleged, to guaranty the sales. The question upon the trial was whether the defendants acted under a *del credere* commission or not. The plaintiff produced the account of sales rendered by the defendants, in which a commission of five *per cent.* was charged, and much of the evidence related to the question whether the amount charged for commissions afforded evidence of an agreement to guaranty the sales. There was other evidence upon the principal question arising out of the acts and declarations of the parties. When the plaintiff rested, the defendants moved for a nonsuit, insisting that they could not be made responsible as guarantors of the sales, except upon an undertaking in writing valid within the statute of frauds. The motion was denied, and the defendants' counsel excepted. The cause was afterwards submitted to the jury who found for the plaintiff, and judgment was rendered accordingly. The defendants brought error to the supreme court where the

judgment of the common pleas was *affirmed;* upon which the defendants brought error to this court. The reasons for the judgment of affirmance are contained in the report of the case in 5 *Hill,* 458.

*George Wood,* for the plaintiffs in error.

*C. E. Benedict,* for the defendant in error.

PORTER, Senator. This writ of error seems to have been brought to determine whether the agreement of a factor to guaranty the sales made by him is a contract within the statute of frauds, requiring an agreement in writing to prove its existence. This necessarily involves an inquiry into the nature of the contract which the factor makes in such a case. The plaintiff insists that one acting under a *del credere* commission is a guarantor or surety for the debt which the purchaser of the goods contracts; while the defendants, on the other hand, maintain that the factor contracts an original absolute obligation, to pay the principal the amount of the sales, at the expiration of the term of credit. It depends upon the character of the contract in this respect, whether the promise of the factor is to pay the debt of another, or his own proper debt, and consequently whether it can be proved by parol.

I find no case decided prior to the year 1816 which favors the position taken by the defendants. Previous to that time there are many cases directly hostile to that position. In 1786 in the case of *Grove* v. *Dubois,* (1 *T. R.* 112,) Lord Mansfield, C. J. held that the engagement of a broker acting under a *del credere* commission was absolute; and that he was liable in the first instance, and at all events. Buller, J. agreed with him fully, and said he had never heard the inquiry made, whether a demand had been made upon the purchaser. We find these two very distinguished judges speaking of this as a familiar principle, and one universally acknowledged and practised upon. The case of *Scott* v. *Mackenzie,* decided in Scotland in 1795, involved the same principle. The defendant, a factor, acting

under a *del credere* commission, at the request of his principal transmitted the proceeds of the sales in a bill on a house in London. The parties to the bill failed before payment. On the question as to the liability of the factor, the court in Scotland decided that no payment but such an one as would have satisfied a proper debt, was sufficient to discharge the factor; and gave judgment for the plaintiff. This judgment was affirmed in the house of lords in 1796. (6 *Bro. Par. Cas.* 280.) In *Houghton* v. *Matthews*, (3 *Bos. & Pull.* 489,) Chambre, J. says, that where a factor sells under a *del credere* commission, he becomes responsible for the price, and he is to be considered, as between himself and the vendor, as the sole owner of the goods. In the same case Lord Alvanley, Ch. J. says, that the effect of a *del credere* commission is to make the factor responsible for the value of the goods to his principal. These opinions were given in 1803. Mr. Bell, in his Commentaries, published in 1816, at *p.* 378, lays down the rule thus: "The correct legal import of a *del credere* engagement, is an engagement to be answerable as if the person so binding himself was the proper debtor. This seems to be the correct legal import of the undertaking; and it is as nearly as possible, the meaning of the Italian phrase which we have adopted. He is placed in relation to the principal, precisely in the same situation, as if he had actually received in loan, the money of the principal." *Paley on Agency,* (*p.* 39,) adopts the same rule. Mr. Comyn, in his treatise on contracts (Vol. I. p. 253,) is equally explicit in his statement of this rule. He says, " a factor *del credere,* on the sale of the goods makes himself absolutely liable in the first instance, for the payment of the price of such goods, in the same manner as if he were himself the purchaser, and was debited for them by the principals as such." Chancellor Kent, in the first edition of his commentaries, published in 1826, states his view at that time of the law on this point as follows: " When a factor acts under a *del credere* commission for an additional premium he becomes liable to his principal when the purchase money falls due; for he is substituted for the purchaser, and is bound to pay, not conditionally, but absolutely, and in the first instance."

(2 *Kent's Com.* 1*st ed.* 487.) The principle is stated in the same way in 2 *Chitty on Com. Law*, 220, 1.

Here we have a whole current of decisions and a coincidence of opinions among eminent authors, in favor of the absolute liability of the factor to pay the price for which goods are sold under such a commission, when the credit has expired. This should, I think, settle the question. But the doctrine has been questioned, and finally overruled in England. It was first doubted in *Morris* v. *Cleasby*, (4 *Maule & Selw.* 566,) decided in 1816; and Chancellor Kent, in the fourth edition of his commentaries, modifies what he had before stated, and treats the point as a *vexata questio*, while in a note to his last edition, he says, it is now settled in England, that the factor is only a surety for the solvency of the purchaser. I do not find, however, that the recent innovation in England has been adopted in this country, except in *Thompson* v. *Perkins*, (3 *Mason's Rep.* 232,) where Mr. Justice Story has followed the case of *Morris* v. *Cleasby*. We are now asked to give the new rule the sanction of this court. But in my judgment we should not follow the courts in England in their departure from the former rule. This is a class of contracts that have existed in this country as long as commerce has flourished, and under which business is daily transacting to a large amount. The understanding of the mercantile community has, I apprehend, been general and uniform, that the agreement between the principal and factor was original and absolute to pay the price of the sale, deducting the commission, at the time the credit expired. Doubtless the factor expected the fund would be received from the purchaser; but whether received or not, he charges himself with the amount in his account with his principal. A contrary rule would require the principal to exhaust his remedy against the purchaser, in order to determine his insolvency, before he could charge the factor as surety.

The supreme court of Massachusetts have had this question before them, and have adhered to the law as it was understood in England prior to 1816. In *Swan* v. *Nesmith*, (7 *Pick.* 220,) decided in 1828, Parker, Ch. J. in giving the opinion of the court,

Wolff *v.* Koppel.

speaking of a *del credere* contract, says: "The legal effect of such a contract is, to make the defendants, the factors, liable at all events for the proceeds of the sale, so that according to some authorities, though denied by others, they may be charged in *indebitatus assumpsit*, or for goods sold to them. And there seems to be no good reason why they should not be so charged, if upon receiving the goods they became accountable; except that their liability is not, fixed until a sale is made, or if upon credit, until the time of payment arrives." I am not satisfied that the new rule is an improvement, if we were at liberty to take our choice; but on the other hand, think it wise to adhere to the old principle, that adjudges the contract of the factor in such cases to be an original and absolute one, for the payment of the price, and shall therefore vote for affirming the judgment of the supreme court.

Senator FOLSOM also delivered a written opinion in favor of affirming the judgment of the supreme court.

HAND, Senator. The question in this case is whether the undertaking of a factor under a *del credere* commission should be in writing to make it valid within the statute of frauds. It is certainly very important to the commercial world that the principle should be finally settled. Perhaps it is not so material how it is settled, though it would probably be sometimes more convenient for a consignor to be able to send goods with *del credere* instructions and to rely on the receiving and selling them as sufficient evidence of the contract, without waiting for a formal written answer to his proposals. But if it is found that the statute is imperative, no reasoning *ab inconvenienti* should prevail. The remedy is by an alteration of that statute.

Several elementary writers have started with the bold assertion that the factor on a *del credere* commission, renders himself liable in the first instance, although he never is in receipt of the money; and that he may be sued for goods sold, as if he had himself purchased the goods, and that his liability is not

affected by the statute of frauds." (3 *Chit. Com. Law*, 194, 220, 1.) Mr. Bell in his commentaries, (1 *Bell's Com.* 378,) says, "he is placed in relation to the principal in precisely the same situation as if he had actually received in loan the money of the principal;" and that he is "liable directly and without any benefit of discussion." Beawes also says that this contract is not affected by the statute of frauds, and may be proved by parol. (*Lex Mer.* 47.) Paley too, lays down the rule that the agent is liable absolutely. (*Paley on Ag.* 41.) Chitty cites *Grove* v. *Dubois*, (1 *T. R.* 112,) decided by Ld. Mansfield in 1786; and *Bize* v. *Dickason*, (*id.* 285, *Bull. N. P.* 280, *and Beawes*, 429.) Mr. Bell refers to *Grove* v. *Dubois* only. Paley quotes the same case, and Beawes. I have looked into the cases. *Grove* v. *Dubois* is in point, and holds a factor primarily liable. *Bize* v. *Dickason* was decided by the same judge, and if applicable adds nothing to *Grove* v. *Dubois*, and neither Buller nor Beawes produces any additional authority; so that I believe this doctrine rests almost entirely upon the case of *Grove* v. *Dubois*.

Let us turn for a moment to the cases on the other side. The great abilities and weight of character of Ld. Mansfield, caused the doctrine in *Grove* v. *Dubois* to be adopted by all the writers immediately succeeding the decision of that case. But after that eminent judge had passed away, and less shining, but perhaps not less sound, thorough-bred common law jurists were elevated to the bench, this doctrine of primary liability was discarded, and the *del credere* factor was pronounced a guarantor of the buyer. This principle has been acted upon in several well considered cases in England thus completely overthrowing the doctrine in *Grove* v. *Dubios*. (*Morris* v. *Cleasby*, 4 *Maule & Sel.* 566, 574; *Gall* v. *Comber*, 1 *B. Moore*, 279, 8 *Taunt.* 558, *S. C.*; *Hornby* v. *Lacy*, 6 *Maule & Sel.* 166; *Peale* v. *Northcote*, 7 *Taunt.* 478, 1 *B. Moore*, 178, *S. C.*; *Leverick* v. *Meigs*, 1 *Cowen*, 645; *Thompson* v. *Perkins*, 3 *Mason*, 232.) It is also laid down as the settled doctrine on this subject by several respectable writers on commercial and other contracts

(*Theobald on Pr. & Sur.* 64; *Chitty on Cont.* 209; *Paley on Agency,* Lloyd's ed. 42, 111 *and notes; Story on Agency,* 33, 250, § 215; 2 *Kent's Com.* 4th ed. 624.) It seems therefore that all the opinions latterly expressed, both judicial and elementary, are in favor of considering this contract within the statute of frauds.

Then upon principle, is it not clear that the factor only guaranties the debt? Bell says the principal may resume his character and recover of the principal debtor. (*P.* 378.) Chitty lays it down that the sale creates a contract between the owner and the buyer, (*p.* 201,) and that if the owner gives notice to the buyer, the latter must pay him, not the factor; and Mr. Justice Story, after collecting all the authorities, is clear that he is a mere guarantor; and so indeed with one exception are all the modern cases that I have been able to find. It is true that in *Swan* v. *Nesmith,* (7 *Pick.* 220,) the supreme court of Massachusetts adopted the other side of the question, and held that the contract was not affected by the statute of frauds. It however seems indisputable, that the debt, even if nominally payable to the factor, belongs to the owner, and may be wholly controlled by him, and that the factor cannot be sued, until a failure of payment by the purchaser. Now the contract of the factor is either an original or a collateral undertaking. If the latter, it is within the statute. Can it be original when there is full privity of contract between the owner and the vendee, and when the liability of the agent depends upon the default of the purchaser? There is no middle ground upon which the contract can be satisfactorily placed. The factor is primarily liable, as decided by Ld. Mansfield, and then all the natural consequences flow; or he is conditionally liable, according to the later and settled doctrine, and then his liability is for the "debt and default of another;" and the evidence of the contract must be in writing with a consideration expressed. I think his undertaking is collateral, and that upon principle and authority it comes within the statute. I am therefore in favor of reversing the judgment of the supreme court.

On the question being put, " Shall this judgment be reversed?" the members of the court voted as follows:

*For reversal: Senators* HAND and MITCHELL—2.

*For affirmance: Senators* BACKUS, BEEKMAN, BEERS, BOCKEE, CORNING, DEYO, EMMONS, FOLSOM, JOHNSON, JONES, LOTT, PORTER, SEDGWICK, SMITH, TALCOTT and WRIGHT— 16.

Judgment affirmed.