[Sac. No. 204.   Department One.—October 15, 1897.]

## J. M. PUGH, Respondent, v. PORTER BROTHERS COMPANY, Appellant.

SALE OF GOODS BY FACTOR—GUARANTY OF FIXED PRICE—BREACH OF INSTRUCTIONS—MEASURE OF DAMAGES.—In case of a guaranty, by a factor that the goods of the principal consigned to him for sale shall yield not less than a fixed price, the breach of his promise renders him liable as a guarantor for the amount which he has promised, irrespective of the value of the goods, or of the price at which he sold them, and the rule that where the factor has been instructed by his principal not to sell the consigned goods below a fixed price, and they are sold below that price, in violation of his instructions, the measure of damages is merely the actual damage or loss sustained by the principal, consisting not of the difference between the selling price and the price fixed by the principal, but of the difference between that price and the actual value of the goods, has no application to a recovery for breach of the contract of guaranty.

ID.—LIABILITY OF FACTOR AS GUARANTOR.—The liability of the factor as a guarantor that the goods shall be sold for not less than a fixed price, becomes absolute upon a sale for cash, or, if upon credit, upon the expiration of the term of credit.

ID.—NEGLIGENCE OF FACTOR—FAILURE TO OBTAIN BEST MARKET PRICE FOR RAISINS—EVIDENCE—MARKET VALUE AT PLACE OF SALE.—Upon the trial of a cause of action based upon the alleged negligence of a factor in failing to obtain the best market price for raisins consigned to him for the purpose of being shipped and sold in Chicago, the market price in Chicago is the basis of the defendant's liability, and their market value at the place of shipment is immaterial, and should not be admitted in proof, where the market value in Chicago can be directly shown, and it is prejudicial error to refuse to permit evidence to be received of what was the market price of raisins in Chicago at the time of sale.

ID.—ORDER NOT TO SELL WITHOUT INSTRUCTIONS—CONVERSION—MEASURE OF DAMAGES.—Where a lot of raisins was to be shipped from Fresno to Chicago and held there by the factor until orders were received from the principal to sell them, a sale by the factor without receiving such orders is a conversion of them, for which their value in Chicago constitutes the measure of damages.

ID.—AVERAGE PRICE OF RAISINS—SHIPMENT AT DIFFERENT DATES—EVIDENCE OF VALUE.—The average price of an average crop of raisins for the entire season is not admissible as evidence of the value of raisins shipped for

sale in Chicago at different dates; and no evidence of any average price of the raisins could affect or vary the liability of the factor as a guarantor of a fixed price; nor could any evidence be received, to measure the liability of the factor for negligence, of any price of raisins antedating their receipt by the factor; but the proper course, in case of shipment of raisins at different dates, is to show the value in the Chicago market of each lot of raisins shipped within a reasonable time after their receipt by the factor to allow of their arrival and sale in Chicago.

ID.—ESTOPPEL—PLEADING—EVIDENCE—RENDITION OF ACCOUNTS—RECEIPT OF PROCEEDS—NEGLIGENCE.—Where no estoppel was pleaded by the defendant, nor any issue of fact of that character submitted to the jury, mere evidence concerning the receipt by the plaintiff and his assignors of the accounts rendered to them by the defendant, and of their receipt of the proceeds of sales as shown by the account cannot be said, as matter of law, to estop them from recovering any damages sustained by reason of the defendant's negligence.

APPEAL from a judgment of the Superior Court of Fresno, County and from an order denying a new trial. J. R. Webb, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, and Wiley J. Tinnin, for Appellant.

Frank H. Short, for Respondent.

HARRISON, J.—The plaintiff is a raisin grower in Fresno county, and the defendant is a corporation engaged in the business of shipping fruits from different points in this state to eastern states and selling them on commission. In 1892 the plaintiff consigned and delivered to the defendant, at Fresno, a quantity of raisins for shipping and sale to his account, and they were shipped by the defendant to Chicago and there sold by it. The defendant rendered an account of its sales to the plaintiff, and, after deducting its advances and the expenses incurred and its commission, paid him the balance. It is claimed by the plaintiff that the defendant, as a consideration for such consignment, guaranteed to him that upon the sale of the raisins it would account and pay to him not less than four and a half cents per pound net. The present action is brought to recover the difference between this amount and the amount received by the plaintiff. The complaint is framed in three counts, one charging the defendant with negligence in the shipment and sales of the

raisins, by which it failed to obtain their value; the second alleging the aforesaid contract of guaranty and its breach, and another for a sale and delivery of the raisins to the defendant at the rate of four and a half cents per pound. At the trial no claim was made under the last count. The plaintiff has also joined in his complaint two other causes of action of the same nature, assigned to him by other shippers—M. B. Silver and A. J. Brooks. A verdict was rendered in favor of the plaintiff, and from the judgment rendered thereon and from an order denying a new trial the defendant has appealed.

There was evidence before the jury tending to show that the defendant made the agreement of guaranty with the plaintiff claimed by him, and also with his assignor, Silver. To the extent, therefore, that the verdict rests upon the implied finding by the jury that such an agreement was made, it must be accepted as correct, and as the defendant does not challenge the correctness of the amount it is unnecessary to consider the effect upon the verdict of not showing that such agreement was made with the plaintiff's assignor, Brooks.

It is contended by the appellant, however, that, notwithstanding such guaranty, it is liable only for negligence in making the sales, and that, even if such negligence be shown, the plaintiff can recover only the difference between the actual value of the raisins at the time they were sold and the amount for which they were sold; that as it appears that the raisins were sold by it for their full value at the time of the sale, the plaintiff has sustained no injury, and consequently is not entitled to any recovery. In support of this contention, several authorities are cited to the effect that where a factor has been instructed by his principal not to sell the consigned goods below a certain price, and in violation of his instructions sells them below that price, the measure of damages is not the difference between the price at which they are sold and the price limited by the consignor, but is the actual damage or loss sustained by the principal; that if in fact the goods were of no greater value than that at which they were sold, the principal has sustained no loss, and can recover no damages from the factor. (*Blot v. Boiceau*, 3 N. Y. 78; *Frothingham v. Evertson*, 12 N. H. 239; *Dalby v. Stearns*, 132 Mass. 230; *Ainsworth v. Portillo*, 13 Ala. 461; *Hinde v. Smith*, 6 Lans. 464; *Nelson*

v. Morgan, 2 Mart., O. S., 256; Mechem on Agency, sec. 1009.)
The appellant urges that the same rule of damages must be ap-
plied to the breach by the factor of his actual agreement for the
guaranty of a fixed price, as by the above authorities is applied
to the breach of his implied agreement not to sell the consigned
goods for less than the limited price when he accepts them under
such instructions.   The appellant, however, overlooks the dis-
tinction between the two obligations assumed by the factor.   The
agreement which is implied from receiving the goods under spe-
cific instructions only adds another term to his obligation as a
factor, and defines the mode in which he is to discharge that ob-
ligation, and a breach of this agreement, like any other breach of
his duty, entitles his principal to only such damages as he has
actually sustained thereby; whereas, in the case of a guaranty
of a fixed price, his obligation is that of a promisor, and its breach
renders him liable for the amount which he has promised.   His
position under the guaranty is similar to that which would have
arisen had he taken the goods on a *del credere* commission, only
that, instead of merely guaranteeing the sales that he may make,
he also guarantees that the goods shall be sold for a fixed amount.
His liability to his principal for this amount becomes absolute
upon a sale for cash, or, if upon credit, upon the expiration of the
credit.   (*Wolff v. Keppel*, 2 Denio, 368; *Cartwright v. Greene*, 47
Barb. 9; *Swan v. Nesmith*, 7 Pick. 220.)   In *Dalton v. Goddard*,
104 Mass. 497, the plaintiffs guaranteed eighty per cent of the
invoice price of certain goods consigned to them for sale.   The
goods were sold for more than this amount, but the expenses and
commissions claimed by them would reduce the net proceeds to
less than this amount.   It was held that the plaintiff took the
risk that the goods would yield that amount, and that the de-
fendants were not liable to pay for any charges which would re-
duce the price to less than the eighty per cent guaranteed.   See,
also, *Rollins v. Duffy*, 18 Ill. App. 398, where the court held that
the contract of the factor could not be construed as a guaranty of a
fixed price, but said that if such had been the contract he would
have been liable therefor, irrespective of the value of the goods or
the price at which he sold them.   In *Ex parte White, In re Ne-
vill*, L. R. 6 Ch. App. 397, it was said by Lord Justice Mellish:
"If the consignee is at liberty according to the contract between

him and his consignor to sell at any price he likes, and receive payment at any time he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time, in my opinion—whatever the parties may think—their relation is not that of principal and agent."

The plaintiff alleges in his complaint that he delivered the raisins to the defendant as his agent and commission broker, "for the purpose of shipment and sale," and that defendant "did ship, sell, and dispose of the same"; and the first count in the several causes of action set forth in the complaint is based upon the negligence of the defendant in not obtaining the best market price to be obtained for the raisins. For the purpose of showing the value of the raisins, the court permitted the plaintiff to introduce evidence of their value at Fresno, and ruled that their value at Chicago was inadmissible. In this ruling the court erred. It was never understood between the parties that the defendant was to sell the raisins in Fresno. They were consigned to it to be shipped to the eastern states, and sold by it there, and it was shown that they were in fact shipped and sold by the defendant in Chicago. Hechtman testified that the understanding with the plaintiff was that the raisins were to be shipped to Chicago, and Silver, one of the plaintiff's assignors, testified: "I understood all these goods had to be sold in the east; that there was no market here for them particularly." The defendant pleaded in its answer that it had received the raisins from the plaintiff and his assignors only as a factor, to be sold by it on commission for the best market price at which they could be sold, and had accounted therefor to the plaintiff. The defendant was entitled to introduce evidence that was relevant to the issue presented by its defense to the complaint, but whether its liability depended upon its negligence in the sale of the raisins, or its failure to comply with its guaranty of a fixed price, is immaterial so far as the relevancy or materiality of their value in Fresno is concerned. The only capacity in which the plaintiff claims that the defendant received the raisins was to ship them away from Fresno, and to sell them in some foreign market.

Under a consignment to a factor for sale, in the absence of any instruction to the contrary, the residence of the factor, or the place to which the goods are consigned is presumed to be the

place of sale. (*Phillips v. Scott*, 43 Mo. 86; *Phy v. Clark*, 35 Ill. 377; *Kauffman v. Beasley*, 54 Tex. 563; *Grieff v. Cowguill*, 2 Disn. 58.) The factor discharges his obligation to the consignor if he sells the goods at the place of consignment for the market value prevailing at that place. "The correct value cannot be more than the highest price in the market which plaintiff had selected as the best for the sale of his goods." (*Nelson v. Morgan, supra.*)

Inasmuch as the raisins were delivered to the defendant for the purpose of being shipped to Chicago and sold by it there, and were in fact sold by it in Chicago, the market price in Chicago was the basis of the defendant's liability, and the court should not only have permitted the defendant to question the witnesses with reference to their market value in that place, but should not have permitted evidence of their value in Fresno. This ruling of the court that the market price at Chicago was inadmissible was in marked inconsistency with its instruction to the jury that in determining whether the raisins were sold for the best obtainable price they must determine what was the reasonable market price at the place and time of the respective sales, and whether the defendant selected the best time and place to sell the raisins. If the jury should find, as under the evidence they would have been authorized, that Chicago was the proper place for the sale of the raisins, it was unavailing to instruct them to determine the reasonable market price at that place when evidence with reference thereto had been excluded. Nor was this error obviated by the fact that in some of the depositions offered by the defendant evidence was given of the market value at Chicago, since the defendant was entitled to show, not only by witnesses offered on its own behalf, but also by the cross-examination of the witnesses offered on behalf of the plaintiff, that the market value at Chicago was different from what they had stated it to be at Fresno. If, as testified by Silver with reference to his own raisins, they were to be shipped to Chicago and held by the defendant until it received orders from him to sell them, a sale by the defendant without receiving such orders would have been a conversion by it, for which the value in Chicago would have been the measure of damages.

The value of the raisins at Fresno would not be material, unless it tended to prove their value at Chicago, and would be admissible only in case the market value at Chicago could not be directly

shown. It is sometimes held that when there is no market value for a commodity in the place of performance, or if the market in that place is in sympathy with another market, it is competent to show the value at other places in the neighborhood (*Gregory v. McDowell*, 8 Wend. 435); or in a distant market (*Rice v. Manley*, 66 N. Y. 82; *Jones v. Railway*, 53 Ark. 27; Wharton on Evidence, sec. 1290); but when the market value at the place of performance is clear and explicit, such evidence is not competent. (*Durst v. Barton*, 47 N. Y. 167; *Cahen v. Platt*, 69 N. Y. 348.) There was no inability in the present case to show the market value of the raisins in Chicago, nor was it shown that their value there in any respect depended upon their value in Fresno.

Even if the value at Fresno could, under any circumstances, be shown, the court should not have permitted the plaintiff to show the average price of an average crop of raisins for the entire season. The liability of the defendant was either upon its guaranty, or by reason of its breach of duty as a factor or commission merchant. As its guaranty was of a fixed price, it could not be varied by the average price during the season, and its liability as a factor could not arise until after it had received the raisins. The plaintiff testified that October is considered the average time to deliver raisins, and that the first delivery by him was October 10th. The first delivery by Silver was October 17th, and the last November 19th. The first delivery by Brooks was October 22d, and the last November 19th. It was shown that it took about ten days to transport the raisins from Fresno to Chicago. There could be no negligence on the part of the defendant in making a sale until after their arrival at Chicago, and it was shown that the market value was greater in October than at any other time during the season. Silver testified: "I found that the price depreciated very much by the 1st of November, and from that time it was in a very low condition. I know that on or about the 1st of November the raisin market in Chicago became demoralized, and raisins became worth a very low price. I know that raisins sold in November and December brought a very much lower price than those sold earlier." Another witness testified that the prices were higher during the first and middle of October than they were afterward. All the testimony tended to show a declining market after the 1st of November. As the greater portion of

the raisins were delivered to the defendant after the 1st of November, defendant could not be held liable for their value in October, and even if under any circumstances the average price could be the measure of its liability, it could only be the average of the prices after the time it became liable. It would be manifestly unjust to include a price higher than at any time for which it was liable, as an element in determining such average. As the defendant could be liable only after its receipt of the raisins, the proper course would have been to show the value within a reasonable time after such receipt.

The evidence concerning the receipt by the plaintiff and his assignors of the accounts rendered them by the defendant, and of their receipt of the proceeds of sales as shown by these accounts, cannot be said, as matter of law, to estop them from recovering from the defendant any damages sustained by reason of its negligence. No estoppel was pleaded by the defendant, nor was any issue of fact of this character submitted to the jury.

The judgment and order are reversed and a new trial ordered.

Van Fleet, J., and Beatty, C. J., concurred.