[No. 3237-0-III.   Division Three.   May 13, 1980.]

.LOREN MUELLER, ET AL, *Respondents,* v. STAPLES &
SON FRUIT CO., INC., *Appellant.*

*John G. Schultz* and *Leavy & Taber,* for appellant.

*Hugh Aaron, Paul D. Fitzpatrick,* and *Lyon, Beaulaurier, Aaron, Weigand, Suko & Gustafson,* for respondents.

McINTURFF, J.—The appellant, Staples & Son Fruit Co., Inc., appeals from a jury verdict finding it liable to the respondents, Loren and Aurelia Mueller, for breach of an oral contract.

The respondents, Mr. and Mrs. Mueller (Mueller), operate a fruit ranch near Yakima, Washington. Staples & Son Fruit Co., Inc. (Staples) is a Washington corporation doing business as a commission merchant. In August 1976, Mueller contacted Staples concerning the sale of his 1976 apple crop. An oral contract resulted, the terms of which were in conflict at trial.

Mueller maintains he instructed Staples to sell the apples on his account for not less than $7.50 per box for the red romes and red delicious varieties and $6 per box for the golden delicious variety. In return, Staples would receive $3.15 per box for packaging. Staples admitted the existence of the contract but denied the specific price limitation. Both parties agree the contract did not contemplate a price guaranty.

Staples sold the apples on the open market at the prevailing market price, later remitting the proceeds less commissions to Mueller. In this manner, Mueller received checks totaling approximately $20,000 from December 1976 to the summer of 1977. All but one check for approximately $1,000 were accepted without objection by Mueller.

In November 1977, Mueller brought this action for breach of contract on the ground Staples had violated its agreement not to sell the apples for less than the stated prices. The jury returned a verdict for the Muellers.

On appeal, Staples assigns error to the court's instruction on damages. Staples contends Mueller is limited to the recovery of actual damages, *i.e.*, the difference between the market value and the price at which the apples were sold. Mueller, on the other hand, was successful in persuading the court to give this instruction:

Instruction No. 9:

    If a commission merchant accepts agricultural products under specific instructions not to sell said products under a specified price and breaches the contract by selling for less, he is liable in damages for *the difference between*

*the specified price and the selling price,* less agreed deductions and deductions required by law.

(Italics ours.)

Mueller argues this instruction comports with the general measure of damages for breach of an express oral contract, to wit, recovery of that amount necessary to put him in as good a position pecuniarily as he would have been had the contract been performed. *See Diedrick v. School Dist. 81,* 87 Wn.2d 598, 610, 555 P.2d 825 (1976). Insisting upon his right to expect exact compliance with the price limitations, Mueller stated that he would just as soon have taken his apples to the "dump" than accept a lower price.[1]

■ A proper analysis of this contract requires consideration of the relationship between a principal and his agent. An agency relationship exists, either expressly or by implication, when one person acts at the instance of and in some material degree under the direction and control of another. *Moss v. Vadman,* 77 Wn.2d 396, 402–03, 463 P.2d 159 (1969); *Matsumura v. Eilert,* 74 Wn.2d 362, 368, 444 P.2d 806 (1968); Restatement (Second) of Agency § 1 (1958).

"It is the first duty of an agent, whose authority is limited, to adhere faithfully to his instructions in all

---

[1]Loren Mueller *testified on cross-examination:*

"Q. Let me ask you to assume it was impossible for these apples to have ever been sold for $7.50. That it was impossible to sell them for any more than they sold them for. You're telling me you don't want them sold. What do you propose be done?

"A. I would just as soon haul them off to the dump.

"...

"A. I would have the satisfaction of knowing I wasn't giving them away.

"...

"Q. After they had the fruit you had conversations with them. Are you telling us you wanted to control your own product, you were trying to get more than $7.50?

"A. If possible I would have, yes.

"Q. If you couldn't get $7.50?

"A. Well, I wanted a minimum of $7.50, not to sell any less than $7.50.

"Q. If it was not available—the market doesn't bear that, can't sell them for that—then what was Mr. Staples to do? What was your understanding?

"A. He should have called me because, like I say, I would have hauled them to the dump."

cases to which they can be properly applied. If he exceeds, or violates, or neglects them, he is responsible for all losses which are the natural consequences of his acts. . . . The damages which the principal may recover in such cases are the *actual damages* sustained by reason of the agent's disobedience. The damages recovered are to be compensatory only." Clark & Skyles, *Law of Agency,* p. 875, § 384.

(Some italics ours.) *Nelson v. Smith,* 140 Wash. 293, 294–95, 248 P. 798 (1926), quoting *Scribner v. Palmer,* 81 Wash. 470, 477, 142 P. 1166 (1914); *accord, Monty v. Peterson,* 85 Wn.2d 956, 959, 540 P.2d 1377 (1975); *Merkley v. Mac-Pherson's, Inc.,* 69 Wn.2d 776, 780, 420 P.2d 205 (1966); *Green v. Bouton,* 101 Wash. 454, 456–57, 172 P. 576 (1918); 32 Am. Jur. 2d *Factors and Commission Merchants* § 64, at 36 (1967).

Here, Staples undertook to act as an agent under the direction of Mueller as principal. A finding inherent in the jury's verdict was that Staples agreed not to sell the apples below the prices set by Mueller.[2] But, even though Staples violated this instruction by selling the apples on the open market for less than the agreed price, there is no suggestion of fraud or lack of good faith. In fact, Mueller stated he did not know the fair market value for his apples, and but for the price limitation, the court agreed Mueller suffered no actual loss.[3]

---

[2]This is evidenced by instruction No. 8 which provided:

"You are instructed that before you consider the issue of damages, if any, you must be persuaded by a preponderance of all the evidence that the defendant, by his acts, words, and conduct, intended to and did accept the plaintiff's offer and bind himself not to sell the plaintiff's apples unless said apples were sold at the stated prices."

Staples took no exception to this instruction at trial or on appeal.

[3]The following exchange occurred between Mr. Schultz, attorney for Staples, and the Court:

"Your Honor, let me ask you this: If the rule is as I suggest it should be [actual damages], would not the defendant be entitled to a directed verdict?

"The Court: Yes. If the court reached the opposite conclusion, I would have to agree with the defendant, that the plaintiff cannot prove an injury under the evidence that is now in the case, and the court would dismiss the case."

Under these circumstances, Mueller is entitled only to indemnification and the fact he limited the sale price for the apples cannot in itself increase his damages. *Dalby v. Stearns,* 132 Mass. 230, 231 (1882). To hold otherwise would render Staples a purchaser of the apples at the named price, and both parties concede the contract did not contemplate a price guaranty.[4] Staples' receipt of the goods under specific instructions merely added another term to his obligation as an agent. Like any other breach of his agreement, the principal is entitled to only such damages as he has actually sustained. *Pugh v. Porter Bros. Co.,* 118 Cal. 628, 630–31, 50 P. 772, 773 (1897); *Hinde v. Smith,* 6 Lans. 464, 466 (N.Y. 1872); *Ainsworth v. Partillo,* 13 Ala. 460, 463 (1848).

Where the agent's breach of duty is clear, the principal will be presumed to have sustained a nominal damage. But to recover more, there must be proof of real loss or actual damage.[5] It is a good defense that the misconduct of the agent has resulted in no loss or damage to the principal, for then the rule of injuria absque damno applies—although it is a wrong, yet it is without any damage. *Blot v. Boiceau,* 3 N.Y. 78, 84–85 (1849).

Had these apples been destroyed by negligence, Staples would have been answerable for the market value. Mueller's damages could not have been enhanced beyond that merely because he ordered them to sell at a certain price and not

---

[4]In *Pugh v. Porter Bros. Co.* 50 P. 772, 773 (Cal. 1897), the court noted at page 773:

". . . in the case of a guaranty of a fixed price, his [the agent's] obligation is that of a promisor, and its breach renders him liable for the amount which he has promised. His position under the guaranty is similar to that which would have arisen had he taken the goods on a del credere commission, only that, instead of merely guarantying the sales that he may make, he also guaranties that the goods shall be sold for a fixed amount. His liability to his principal for this amount becomes absolute upon a sale for cash, or, if upon credit, upon the maturity of the credit."

[5]*Timmsen v. Forest E. Olson, Inc.,* 6 Cal. App. 3d 860, 86 Cal. Rptr. 359, 366 (1970); *Nelson v. Smith,* 140 Wash. 293, 294–95, 248 P.2d 798 (1926); *Blot v. Boiceau,* 3 N.Y. 78, 84–85, (1849).

for less. When, instead of a loss by negligence, the loss occurs from the agent's breach of duty, without fraud, the measure of damages is the same. *Dalby v. Stearns, supra* at 231; *Frothingham v. Everton,* 12 N.H. 239, 243 (1841).

Mueller argues that as a consequence of Staples' breach of duty, he was denied the opportunity to seek out a better price for his goods. But, if he can so prove, he is entitled to recover accordingly. *See Blot v. Boiceau,* 3 N.Y. 78, 85 (1849). At first blush, it might appear that we have rendered Mueller's instructions nugatory and thus impaired the right of the owner to fix a price for his goods. Addressing this concern, the court said in *Blot v. Boiceau, supra* at 87:

> It is said, that this rule of damages will enable factors to violate the instructions of their principals with impunity. But that is a mistake. If they sell below the instruction price, though at the then market value, they will take the peril of a rise in the value of the goods at any time before an action is brought for the wrong; and, perhaps, down to the trial. The owner has a right to keep his goods for a better price; and if the market value advances after the wrongful sale, the increased price will form the standard for ascertaining his loss, which the factor, who has departed from instructions, must make good.

Thus, we find the court erred in its damage formulation. The factor violates the instructions of his principal at his peril. He is liable to the principal for actual damages, *i.e.,* the difference between the selling price and the market value of the goods, determined at or within a reasonable time after the wrongful sale. The jury should have been so instructed.[6]

Judgment of the Superior Court is reversed.

MUNSON and ROE, JJ., concur.

Reconsideration denied June 5, 1980.

Review denied by Supreme Court August 15, 1980.

---

[6]Staples' remaining assignments of error were not discussed in the brief; we consider them waived. *State v. Davis,* 60 Wn.2d 233, 236, 373 P.2d 128 (1962).